IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 15 CR 0060 |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Jeffrey Cole |
| MEDIHA MEDY SALKICEVIC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Ms. Salkicevic has been charged in two counts of a three-count indictment in the Eastern District of Missouri. *See* 15 CR 00049. (Eastern District of Missouri, St. Louis). Counts I and III charge plaintiff and four others with conspiracy to provide material support to terrorists in violation of 18 U.S.C. §2339A. Each count carries a minimum mandatory sentence of 15 years.

On Saturday, February 7, 2015, following her arrest on Friday the 6th, a removal hearing was held. The government sought to have the defendant removed in custody to St. Louis. While not contesting identity, the defendant moved for an accelerated bond hearing.[1] Pursuant to that request, a bond hearing was held on February 9th at 10:00 a.m.[2] The parties have not filed a brief in support of their respective positions or called the court's attention to any cases.

### A.

The Bail Reform Act's general preference for liberty – a preference that is consistent with and demanded by our entire heritage – underlies the axiom that pretrial detention will occur only when

---

[1] The defendant is not charged in Count II.

[2] At my request, the defendant was housed at the MCC to enable her lawyer to have access to her over the weekend.

necessary. *Hamilton v. Lyons*, 74 F.3d 99, 105 (5th Cir. 1996). As the Supreme Court has stressed, "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Thus, the Bail Reform Act requires that a person charged with an offense shall be released on personal recognizance or upon execution of an unsecured appearance bond unless further conditions are necessary to reasonably assure attendance at trial and the safety of the community. 18 U.S.C. § 3142(a) and (b).

The Act recognizes that bond decisions are necessarily exercises in uncertain prophesy. *Ward v. United States*, 76 S.Ct. 1063 (1956)(opinion of Frankfurter, J.). But at the same time, the Act is premised on the theory that there is nothing inherently unattainable about a prediction of future criminal conduct or flight. The fact-intensive assessment of prescribed statutory factors and the various safeguards under the Act are specifically designed to further the accuracy of that determination. *Salerno*, 481 U.S. at 751.

Under the Act, there is a rebuttable presumption that in cases involving certain specified offenses that Congress has deemed especially serious, there is no set of conditions that will reasonably assure the appearance of the defendant at trial or the safety of the community. The crimes charged in this case fall within that classification. See 18 U.S.C.§3142(e)(3)(C). Indeed, the Bail Reform Act specifically compels courts to take into account whether a Federal crime of terrorism has been charged when assessing detention issues. 18 U.S.C. § 3142(g)(1); *United States v. Sheikh*, 994 F.Supp.2d 736, 739 (E.D.N.C. 2014).

"Although most rebuttable presumptions found in the law disappear when any evidence is presented by the opponent of the presumption, the rebuttable presumption of § 3142(e) is not such a 'bursting bubble.'" *United States v. Garcia*, 801 F.Supp. 258, 261 (S.D.Iowa 1992) (citing *United*

States v. Jessup, 757 F.2d 378, 383 (1st Cir.1985)). See also United States v. Stone, 608 F.3d 939, 945-946 (6th Cir.2010).

"'[T]he presumption of dangerousness...represents Congressional findings that certain offenders ... are likely to continue to engage in criminal conduct undeterred either by the pendency of charges against them or by the imposition of monetary bond or other release conditions.' To rebut the presumption, therefore, a defendant should 'present all the special features of his case' that take it outside 'the congressional paradigm [.]'" Stone, 608 F.3d at 946. To rebut the presumption either of dangerousness or of flight, the defendant must produce some evidence. Id.; Sheikh, 994 F.2d at 739; United States v. Kandasamy, 2008 WL 2660610, 1-2 (E.D.N.Y. 2008). Arguments are not evidence in any context. Cf. United States v. Philpot, 733 F.3d 734, 747 (7th Cir.2013); In re: Payne, 431 F.3d 1055, 1066 (7th Cir. 2005)(Posner, J.)(unsupported statements in oral argument are not sufficient).

While the defendant bears a limited burden of production, the ultimate burden of persuasion remains with the government to show by clear and convincing evidence that the defendant presents a danger to the community, and by the lesser standard of a preponderance of the evidence that the defendant presents a risk of flight. Kandasamy, 2008 WL 2660610 at 1-2. Satisfying the burden of production does not eliminate the presumption favoring detention; it "remains a factor to be considered among those weighed by the district court." Stone, 608 F.3d at 945-946; United States v. Bonilla, 388 Fed.Appx. 78 (2nd Cir. 2010).

The statutory factors that inform bond decisions in this case are not different than in any other. They are: the circumstances of the offence charged, the weight of the evidence, the history and characteristics of the person, including whether at the time of the current offense the person was on

3

other release pending trial under federal, state or local law, the person's family ties, length of residence in the community, appearance at court proceedings, and the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. §1342(g)(1)-(4).[3]

**B.**

After conducting a detention hearing as required by §3142(f), and upon consideration of the presentations by the government and the defendant and the report prepared by the United States Pretrial Services Office ("PTSO Report"), which recommends detention, I find that the statutory presumption that no set of conditions will reasonably assure the attendance of the defendant at all court proceedings and protect the community has not been rebutted. Further, I find that even if it had been, the government has shown by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant in Missouri. And, it has shown by clear and convincing evidence, that there is no condition or set of conditions that will reasonably assure the safety of the community, which can, of course, include foreign communities. *United States v. Hir*, 517 F.3d 1081, 1089 (9th Cir.2008).

With respect to the statutory factors in §3142(g), I find:

(a) <u>Nature and Circumstances of the Offense</u>: The nature and circumstances of the offenses with which the defendant is charged could scarcely be more serious, and the defendant wisely does not contend otherwise.

---

[3] The nature and circumstances of the offense and the history and characteristics of the defendant were also factors under the sentencing guidelines. These and the other factors under 18 U.S.C. §3553(a) have been described by the Seventh Circuit as "intangibles, 'weighable' only in a metaphorical sense, and that the sentencing judge is in a better position than the appellate judges to place them in the balance with competing considerations." *United States v. Gammicchia*, 498 F.3d 467, 469 (7th Cir. 2007).

(b) <u>Weight of the Evidence</u>: While all defendants are presumed innocent, that presumption, which the Act itself recognizes, obviously does not preclude or render superfluous an analysis of the weight of the evidence against a defendant. Here, this factor weighs heavily against the defendant since it was sufficient for a grand jury to find probable cause to indict the defendant and her co-conspirators for aiding terrorism through the giving of money and equipment to foreign terrorist organizations including Al Qa'ida in Iraq and ISIL/ISIS. (Indictment ¶13). The indictment charges that Ms. Salkicevic facilitated the conspiracy by contributing money to be used by those fighting in Syria, Iraq and elsewhere in support of the Foreign Terrorist Organizations named in the indictment. (¶¶17, 18). Thus, the weight of the evidence is good deal more compelling than in a case involving only a criminal complaint.

Curiously, the defendant says the indictment counts for little, and that I have no *evidence* before me that I can consider. That is an illogical position and one contrary to all the cases. In *Kaley v. U.S.*, _U.S._,134 S.Ct. 1090, 1098 (2014), for example, the Supreme Court held that the grand jury's unreviewed finding may play a significant role in determining a defendant's eligibility for release before trial under the Bail Reform Act of 1984. That statute creates a rebuttable presumption that a defendant is ineligible for bail if "there is probable cause to believe" she committed certain serious crimes. §§ 3142(e)(2)–(3), (f). The Courts of Appeal have uniformly held that presumption operative whenever an indictment charges those offenses. The Court went on to note that "relying on our instruction that an indictment returned by a proper grand jury 'conclusively determines the existence of probable cause,' the courts have denied defendants' calls for any judicial reconsideration of that issue."*See also, United States v.. English*, 629 F.3d 311, 319 (2nd Cir.2011).

In Paragraph 30 of Count I of the indictment, Ms. Salkicevic is charged with approvingly

5

saying, in response to receiving a photograph depicting two long rifle scopes which she was told would be used on a sniper rifle, that "she hoped that they reach 'them' and that they be put to good use." The allegations of the indictment in Count I are reincorporated by reference into Count III, which charges Ms. Salkicevic and her five co-conspirators with having provided money, United States military uniforms, combat boots, military surplus goods, tactical gear and clothing, firearms accessories, optical equipment to Terrorist Organizations.

The defendant has argued that we do not know what the above quoted phrase means, and that it may have an innocent explanation. But that tendentious and speculative argument is not *evidence*, and more importantly it ignores the conclusivity of the probable cause finding by the grand jury that returned the indictment that the statement was relevant to the conspiracy and the defendant's knowledge of the conspiracy's illicit aims and ends. Therefore, it is vain to contend that the defendant's expression of satisfaction at the prospect of others being killed is too ambiguous to be accorded an incriminating meaning. Only literary perversity or jaundiced partisanship could find an innocent meaning in the defendant's words.

(c). <u>The characteristics of the defendant</u>: the defendant places great stock in her being a naturalized citizen of the United States, who has lived in the Chicago area for an extended period of time with her husband and 4 minor children. She also points out that she is an employee of alliance Airlines, which is a cargo facilitating company in the Chicago area. During the course of the argument, I also learned that the government is in possession of the defendant's passport, and that two of the children's passports have expired, although at the time of her arrest, she was on her way to the passport office to renew the passports for her two younger children. This fact has some evidentiary significance although it is certainly circumstantial and not conclusive.

Additionally, it is my understanding that a third child's passport is also in the possession of the government. From this, the defendant argued that she and three of her children cannot leave the Country and flee to Bosnia, with which she has extremely close ties: her parents live there and she is building a large home that is either completed or on the verge of being completed.[4] The home, it should be noted, is owned by the defendant apparently without debt or encumbrance. The latter circumstance is significant not only for underscoring her close ties to Bosnia but it manifests some intent to return to that country.[5] Also, the building of that home would appear to reflect a source of income not otherwise disclosed to Pretrial Services. Indeed, the defendant has told Pretrial Services that she has only $7,000 in a checking account. Yet, in April 2014, she traveled to Istanbul and Belgrade over a 19 day period, and she is expecting a several thousand dollar tax refund.

Even if it were to be concluded that the defendant could not flee to Bosnia, that does not resolve the question of risk of flight. The question is not whether the defendant will flee to Bosnia but whether she will not appear to answer the charges in the Eastern District of Missouri. Ours is a massive country with enumerable places to conceal oneself and one's family and so Bosnia's current inaccessibility is not conclusive by any means.

The fact remains that the defendant is facing a minimum of 15 years in prison on each of the two counts in which she is charged in the indictment. She is, therefore, facing as many as 30 years in federal custody should she be convicted and sentenced to consecutive prison terms. There is

---

[4] It should be noted parenthetically that the government put on no evidence that Ms. Salkicevic is a dual citizen of the United States and Bosnia, which, of course, would allow her to leave the United States on her Bosnian passport.

[5] The defendant's counsel argued, without any proof, that people often build homes in foreign countries where their parents live. That is argument, not evidence.

probable cause to believe the charges against her in the indictment are true, and the defendant has presented no (or at least insufficient) evidence to counter those presumptively true allegations. She has every motive to flee and far less to stay. Her husband and children are under no disability, and thus, flight would not result in a permanent separation from them.

## CONCLUSION

Under the Bail Reform Act, a court is to consider evidence adduced by the parties "'in terms of the likelihood that [the defendant]... will pose a danger [or a risk of flight]" that cannot be ameliorated by any set of conditions. *Hir*, 517 F.3d at 1090-91. In the instant case, that likelihood is established by statute which creates a rebuttable presumption that no condition or set of conditions will assure the safety of the community or the attendance of the defendant at court proceedings. That statutory presumption has not been overcome. Accordingly, the government's motion that the defendant be transported to the Eastern District of Missouri in custody is granted and the defendant's motion for bond is denied. Of course, the question of bond pending trial can be renewed before a judicial officer in St. Louis upon the defendant's arrival there.

IT IS HEREBY ORDERED that the defendant shall remain in custody until further order of court.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 2/10/15

8